IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Jane Doe, by and through her guardians, Gregory and Michelle Johnson, Gregory Johnson, Michelle Johnson, and John and Jane Does # 1-10,<br><br>           Plaintiff,<br><br>v.<br><br>Kameron Seth Cox, Titsa M. Flesch, Healthy Minds, L.L.C., Debby Thompson, and John and Jane Roes # 1-10,<br><br>           Defendants. | CIVIL ACTION NO.: 3:06-3663-JFA<br><br><br><br>**PLAINTIFFS' MEMORANDUM OF AUTHORITIES AND SUBJECT MATTER JURISDICTION BRIEF** |

Plaintiffs respond as follows to the Court's inquiry as to whether subject matter jurisdiction exists in the Plaintiffs' 42 U.S.C. § 1983 – Failure to Protect Claims:

**PROCEDURAL HISTORY**

The Court, sua sponte, investigated the issue of subject matter jurisdiction under Fed.R.Civ.P. R. 12(b)(1). A hearing was held on May 22, 2007, after which the Court ordered Plaintiffs to write a brief within ten (10) days on the existence of subject matter jurisdiction in Plaintiffs' federal claims. Once Plaintiffs' brief is filed, Defendants have ten (10) days to respond.

**FACTS**

The South Carolina Department of Social Services ("SCDSS"), and its employees are responsible for protecting the safety and well-being of the children in SCDSS custody. As a result of a series of actions and inactions by Defendants, foster child Jane Doe has suffered

severe and permanent physical, emotional, and developmental harm. Jane and her brother Kameron Cox were taken into the legal custody of SCDSS in August, 1999, when South Carolina Child Protective Services ("CPS") received a report that Jane had been sexually abused in the biological home. See Exhibit A., p. 12. Through the course of the CPS investigation, Kameron Cox disclosed that he had sexual contact with Jane. Shortly thereafter, the children underwent a medical examination. Jane's examination revealed a labial adhesion. Id. Despite this knowledge, SCDSS continued to placed the children together – moving them together from placement to placement – for more than the next two years (but for three weeks when Kameron was committed to a psychiatric facility). Id. Even after finally separating the children in October, 2001, SCDSS again placed the children together in September, 2002. See Exhibit A. pp. 12-14.

Between September, 2002 and the time Jane was adopted by Michelle and Gregory Johnson in June, 2003, Jane, and numerous other children in the same placement as Kameron Cox, were the victims of frequent sexual assault by Kameron Cox. See Exhibit A, p. 15.; Exhibit B, p. 4; Exhibit C, pp. 3, 18-22; Exhibit D, p. 6, 15-18.

SCDSS was at all times aware of Kameron's history of sexual assault of Jane, and the danger he posed to her and other children. SCDSS admitted in its adoption background summary that it knew Kameron Cox was a potential sexual predator. See Exhibit A, p. 12. And SCDSS has admitted that it failed to treat Kameron Cox. See Exhibit C, pps. 8-12.

Further, in a mental health examination taken at the Assessment & Resource Center (ARC) in April, 2005. Jane disclosed that she had directly reported to her SCDSS social worker, Debbie Thompson, and to her counselor, Titsa Flesch, that she was being raped by Kameron

Cox. Rather than informing CPS of the report and taking steps to ensure the safety of Jane and the other children in Kameron Cox's placement, Debbie Thompson told Jane not to speak of the incidents further, and Tita Flesch – a mandated reporter – simply ignored the report. See Exhibit B, p. 2; Exhibit B, p. 8; and Exhibit F.

SCDSS did not disclose Jane's history of victimization by Kameron Cox to Michelle and Gregory Johnson until after the adoption was finalized and Kameron Cox formally confessed the rape of his sister, and other children, to staff at a wilderness camp. See Exhibut B, p. 4; Exhibit C, pp. 3, 18-22.

### Fed.R.Civ.P. 12(b)(1) STANDARD OF REVIEW

A case will be dismissed under this provision if the Court lacks the statutory authority to hear and decide the dispute. Specifically, if there is no federal question at issue, this case should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1). The Court was clear that not only was it making a facial challenge based on the adequacy of the language used in the pleading[1] but it also wished to investigate the factual merits of Plaintiffs' asserted federal jurisdiction, which is a substantive challenge.[2] In a facial challenge, Plaintiff is required to formally aver the basis for jurisdiction in federal court; if he fails to do so, the pleading can be dismissed. On a substantive challenge, the actual facts and allegations before the Court may belie that averment, confirming that federal jurisdiction is absent and, thus, compelling the case's dismissal.[3] Verifying its subject matter

---

[1] *Taliaferro v. Darby Twp. Zoning Board*, 458 F.3d 181 (3rd Cir. 2006); *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Continental Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005); *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).
[2] *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Continental Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005); *Savage v. Glendale Union High School*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)
[3] *Gibbs v. Buck*, 307 U.S. 66 (1939); *Scarfo v. Ginsberg*, 175 F.3d 957, 960-61 (11th Cir. 1999); *United States v.*

jurisdiction is a federal court's "first duty" in every case[4]—consequently a party cannot waive or forfeit the requirement of subject matter jurisdiction,[5] nor can the parties consent to have a case heard in federal court where subject matter jurisdiction is absent.[6] It is well established that dismissals for lack of subject matter jurisdiction may be ordered sua sponte by the trial court or even by a subsequent appeals court.

In a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) where factual or substantive subject matter jurisdiction is attacked, the Court will not presume that the Plaintiff's factual allegations are true,[7] and will not accept conclusory allegations as true,[8] but may instead weigh the evidence before it and find the facts, so long as this factfinding does not involve the merits of the dispute.[9] In doing so, the Court enjoys broad discretion. The Court may receive and consider extrinsic evidence.[10] The Court must permit the pleader to respond with supporting evidence and, where necessary, may convene an evidentiary hearing or plenary trial to find the facts.[11]

In cases involving factual or substantive attacks to the Court's subject matter jurisdiction, the parties may produce affidavits and other materials to support their positions on subject matter jurisdiction.[12] The Court may also consider matters of public record.[13]

---

*North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999).
[4] *McCready v. White*, 417 F.3d 700, 702 (7th Cir. 2005).
[5] *Arbaugh v. Y & H Corp.*, 546, U.S. 500 (2006); *Nesbit v. Gears Unlimited, Inc.* 347 F.3d 72, 76-77 (3rd Cir. 2003).
[6] *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939).
[7] *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3rd Cir. 2003); *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003).
[8] *Zappia Middle East Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).
[9] *McCann v. Newman Irrevocable Trust*, 458 F.3d 281 (3d Cir. 2006).
[10] *Hernandez-Santiago v. Ecolab, Inc.*, 397 F.3d 30, 33 (1st Cir. 2005).
[11] *McCann v. Newman Irrevocable Trust*, 458 F.3d 281 (3d Cir. 2006); *Skwira v. United States*, 344 F.3d 64, 71-72 (1st Cir. 2003).
[12] *Alliance For Env'tl Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n. 8 (2d Cir. 2006); *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Continental Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005);

### This Court Has Subject Matter Jurisdiction Because Defendants Failed To Satisfy Their Constitutional Duty Not To Place Plaintiffs In Unsafe Foster Homes

A.     Introduction

*Bowers v. DeVito*[14] stated that the "Constitution is a charter of negative liberties; it tells the state to leave people alone; it does not [generally] require...the state to provide services, even so elementary a service as maintaining law and order." An exception to this principal occurs when the state affirmatively takes custody or control of people, such as prisoners, mental patients, and children whose parents are unable to care for them. *See, e.g., Patten v. Nichols*, 274 F.3d 829, 841 (4th Cir. 2001). Once the state takes custody or control of a person, the state has a duty to protect that person. *See, e.g., Thomas S. v. Flaherty*, 902 F.2d 250 (4th Cir. 1990).

B.     *Deshaney v. Winnebago County Department of Social Services*[15] & The State's Duty When Placing Children In State Custody

In *Deshaney v. Winnebago County Department of Social Services*[16], a child welfare agency was sued for failing to remove a child from his home even though the agency had notice that the child's father was abusive. In a narrow holding, the Supreme Court held that the Fourteenth Amendment imposes no obligation on public officials to protect children who are not in state custody from violence by non-state actors. 489 U.S. 189, 202 (1989).

However, in *Deshaney* the Supreme Court explained that the removal of a child from the home and placement in a "foster home operated by its agents" might be "sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect" children

---

*Savage v. Glendale Union High School*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003); *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003).
[13] *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).
[14] 686 F.2d 616, 618 (7th Cir. 1982).
[15] 489 U.S. 189 (1989).
[16] 489 U.S. 189, 192-93 (1989).

from mistreatment by their foster parents. *See id.* at 201 n.9 (citing *Doe v. New York City Dep't of Social Servs.*,[17] *Catholic Home Bureau v. Doe*,[18] and *Taylor ex rel. Walker v. Ledbetter*[19]). Lower courts have consistently held that states have an affirmative duty to protect children whom states place into foster care. *See, e.g., L.J. v. Massinga*, 838 F.2d 118, 123 (4th Cir. 1988) (affirming, though not addressing, the district court's finding that "there existed a constitutional right to protection" for foster children); *Davis v. Dep't of Social Svcs. of Baltimore*, 1991 U.S. App. Lexis 19081, No. 90-1864, at *9; *Yvonne L. v. New Mexico Dep't of Human Servs.*, 952 F.2d 883, 892-93 (10th Cir. 1992); *Taylor ex rel. Walker v. Ledbetter*, 818 F.2d 791, 797 (11th Cir. 1987) (en banc); *Baby Neal v. Casey*, 821 F.Supp. 320, 335 (E.D.Pa.1993); *Wendy H. v. Philadelphia*, 849 F.Supp. 367, 372 (E.D.Pa.1994). Indeed, this duty even includes an obligation to provide children in foster care with adequate and safe shelter, food, environment, and medical care. *See, e.g., L.J. v. Massinga*, 699 F. Supp. 508, 537 (D. Md. 1988), *aff'd*, 838 F.2d 118 (4th Cir. 1988); *LaShawn A. v. Dixon*, 762 F. Supp. 959 (D.D.C. 1991); *Clark K. v. Guinn*, No. 2:06-CV-1068-RCJ-RJJ, 2007 WL 1435428 at *15 (D.Nev. May 14, 2007).

   C.   **The State Violated It's Duty To Plaintiffs By Forcing Them To Live With A Known Rapist**

State actors have a duty to protect people from dangers created by the state. *See, e.g., See, e.g., Sloane v. Kanawha Sherrif Dep't*, 342 F. Supp.2d 545 (S.D. W.Va. 2004); *Pullium v. Ceresini*, 221 F. Supp. 2d 600, 605 (D. Md. 2002). This duty is enhanced when there is a special relationship between the tortfeasor and the victims of the state-created danger. *See Pinder v. Johnson*, 54 F.3d 1175 (4th Cir. 1995). In the present matter, Defendants took custody of

---

[17] 649 F.2d 134 (2d Cir. 1981), after remand, 709 F.2d 782 (2d Cir.), *cert. denied sub nom.*
[18] 464 U.S. 864 (1983)
[19] 818 F.2d 791 (11th Cir. 1987) (en banc), *cert. denied*, 489 U.S. 1065 (1989)

Plaintiffs by terminating the rights of their parents and placing the children in foster care; this clearly constitutes a special relationship and enhances Defendants' duty to the children in their care.

At no time were these children free to escape their foster home and Kameron Seth Cox. As minors, they were not competent or sophisticated enough to utilize the system or law enforcement to address their injuries sustained at the hand of Kameron Seth Cox.[20] Even when the children tried to report the rapes, they were ignored. Thus, Defendants had an affirmative duty not to knowingly place Plaintiffs in situations where Defendants knew that Plaintiffs Due Process Rights would likely be violated. *See, e.g., White v. Chambliss*, 112 F.3d at 737 (acknowledging the right of a child in state custody not to be "handed over to a foster parent or other custodian, private or public, *whom the state knows or suspects to be a child abuser.*") (Emphasis added); *see also, Meador v. Cabinet for Human Resources*, 902 F.2d 474, 476 (6th Cir.1990); *Taylor v. Ledbetter,* 818 F.2d 791, 797 (11th Cir.1987). Defendants failed in this duty by placing Jane Doe and Plaintiffs with a known rapist.

D.     **Further Discovery Will Support Plaintiffs' Claims**

It is worth noting that, in this case, no discovery has been conducted. Plaintiffs offer exhibits (their only documentary evidence; although Plaintiffs believe that discovery will provide significant additional evidence) which at a minimum demonstrate that SCDSS knew Kameron Seth Cox had been sexually inappropriate with his sister. These exhibits are: (1) four

---

[20] The court was very succinct in *Hernandez v. Texas Dep't. of Protective & Reg. Svcs.*, 2002 WL 31689710 (N.D. Tex. 2002) (denying defendant's motion for summary judgment and holding that the Texas foster care agency can be liable for death of baby placed in abusive and neglectful home "by virtue of the *state affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid.*"). Emphasis added.

year-old Jane Doe's report that her brother was molesting her in the Adoption Summary,[21] (2) Kameron Seth Cox's disclosure in that same Adoption Summary,[22] (3) Jane Doe's disclosures to the Assessment & Resource Center (ARC) on April 6, 2005,[23] and lastly, (4) admission states Kameron Seth Cox's juvenile detention hearings and plea.[24]

Here, there is no possibility of confusion that these injuries were from roughhousing or playing. There is no excuse or possible discretionary reason why SCDSS, Debby Thompson, and Tetsa Flesch did not protect this little girl from her brother. There is no ministerial protection for a state-actor who identifies a child who is a sexual predator and then places that child in foster homes where he has access to other children and then sexually assaults them.

SCDSS and Debby Thompson knew from the predator's own admission that he had sex with his sister early on when SCDSS first gained physical and legal custody of the Cox children. They were on notice again when Plaintiff Jane Doe told her DSS caseworker and her state contracted therapist that her brother was molesting her. From the evidence now before the Court and with no opportunity to conduct discovery, Plaintiffs have demonstrated that SCDSS, Debby Thompson, and Tetsa Flesch were on notice that (1) Kameron Seth Cox was a threat, (2) that by placing Kameron Seth Cox in a foster home, group home, or institution with other children he had access to unprotected children and he was dangerous to the physical well-being of these other children and (3) keeping Kameron Seth Cox in the same home with Plaintiff Jane Doe after she reported to Defendant Debby Thompson and Tetsa Flesch that she was raped was a threat of harm to Plaintiff Jane Doe. The evidence presented demonstrates a deliberate indifference to a

---

[21] Exhibit A, p. 12.
[22] Exhibit A, p. 12.
[23] Exhibit B, p. 8.
[24] Exhibit C, p. 12, l. 8-11; Exhibit C, p. 11, l. 11-15; Exhibit D, p. 6, l. 15-24; Exhibit D, p. 9, l. 14-20; Exhibit D,

state-created danger, in violation of Plaintiffs' Fourteenth Amendment rights. *See, e.g., K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846, 852 (7th Cir. 1990); *Taylor ex rel. Walker v. Ledbetter*, 818 F.2d 791, 795 (11th Cir. 1987) (explaining that "[b]y alleging that the gross negligence and deliberate indifference of state officials rendered her comatose, the child has sufficiently pleaded a liberty interest."); *Doe v. New York City Dep't of Social Servs.*, 649 F.2d 134, 141 (2d Cir. 1981).

### E. Qualified Immunity Does Not Shield Defendants' From Their Violation Of Clearly Established Precedent

As the court stated in *Pinder*, "Qualified immunity thus allows officials the freedom to exercise fair judgment, protecting "all but the plainly incompetent or those who knowingly violate the law."[25] "Qualified immunity under § 1983 shields officials from civil liability unless their actions violated clearly established statutory or constitutional rights of which a reasonable person would have known."[26] The *White* decision was handed down in 1997. Defendants were aware that when they are "plainly placed on notice of a danger and [choose] to ignore the danger notwithstanding the notice,"[27] they have violated a foster child's substantive Fourteenth Amendment protections.

### Conclusion

State actors have a duty not to place foster children in locations where the state has advance knowledge that the child will be harmed. *See, e.g., See, e.g., White v. Chambliss*, 112 F.3d 731 (4th Cir. 1997) (noting the Fourth Circuit has not foreclosed the possibility that an

---

p. 11, l. 6-7.
[25] *Pinder* at 1173 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986).
[26] *Pinder* at 1173 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

agency could be liable for displaying deliberate indifference in placing a child into a foster home that was known to be dangerous); *Yvonne L. V. New Mexico Dep't of Human Servs.*, 959 F.2d 883, 892 (10th Cir. 1992); *Ledbetter*, 818 F.2d at 797; *Doe*, 649 F.2d at 141 (holding that a child in state custody has a constitutional right not to be placed in a setting known to be unsafe). They failed in this duty when they forced Plaintiffs to live with Kameron Seth Cox, a known rapist. This failure resulted in Plaintiffs being repeatedly raped, in violation of well-established constitutional rights. *See, e.g., Yvonne L. v. New Mexico Dep't of Human Servs.*, 959 F.2d 883, 892-93 (10th Cir. 1992); *Davis v. Dep't of Social Svcs. of Baltimore*, 1991 U.S. App. Lexis 19081, No. 90-1864, at *9; *L.J. v. Massinga*, 838 F.2d 118, 123 (4th Cir. 1988); *Taylor ex rel. Walker v. Ledbetter*, 818 F.2d 791, 797 (11th Cir. 1987) (en banc); *Baby Neal v. Casey*, 821 F.Supp. 320, 335 (E.D.Pa.1993); *Wendy H. v. Philadelphia*, 849 F.Supp. 367, 372 (E.D.Pa.1994). Accordingly, jurisdiction is proper because Defendants' actions violated Plaintiffs constitutional rights.

Respectfully submitted,

The Butcher Law Firm, PA

s//Robert J. Butcher
Robert J. Butcher
D.S.C. Bar No. 9767
Attorney for Plaintiffs
1124 Little Street
Post Office Box 128
Camden, South Carolina 29020
Telephone: 803.432.2088
Facsimile: 803.432.3066

Camden, South Carolina
June 1, 2007

---

[27] *White* at 737.