UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Jane Doe, by and through her guardians, Gregory and Michelle Johnson; Gregory and Michelle Johnson; and John and Jane Does #1-10,<br>      Plaintiffs,<br>vs.<br><br>South Carolina Department of Social Services (SCDSS); Kameron Seth Cox; Titsa M. Flesch; Healthy Minds, LLC; Debby Thompson; and John and Jane Roes #1-10,<br>      Defendants.<br>_____ | C/A No.: 3:06-3663-JFA<br><br><br><br><br>**ORDER** |
| Jane Doe, by and through her guardians, Gregory and Michelle Johnson; Gregory and Michelle Johnson; and John and Jane Does #1-10,<br>      Plaintiffs,<br>vs.<br><br>South Carolina Department of Social Services; Directors Elizabeth G. Patterson, Kim S. Aydlette; Managerial Roes #1-10; Supervisory Roes #1-10; Caseworker Roes #1-10; Foster Parent Roes #1-10.<br>      Defendants.<br>_____ | C/A No.: 3:07-1629-JFA |

This matter comes before the court on the following motions: (1) defendants' motion for summary judgment [dkt # 121 in 06-3663 and dkt # 39 in 07-1629]; (2) defendants' motion for sanctions [dkt # 105 in 06-3663 and dkt # 25 in 07-1629]; (3) defendants' motion to disqualify counsel [dkt # 123 in 06-3663 and dkt # 41 in 07-1629]; and (4) plaintiffs'

motion for leave to file excess pages [dkt # 131 in 06-3663 and dkt # 51 in 07-1629]. On July 30, 2008, the court heard oral argument on the substantive motions and took the matters under advisement. This order serves to announce and memorialize the court's ruling on the pending motions. For the reasons stated herein, plaintiffs' motion for leave to file excess pages is granted, defendants' motion for summary judgment is granted and the remaining motions are deemed moot.

I.     **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well-established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The non-moving

party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Applying this standard to the case, the court finds that summary judgment is appropriate, as discussed herein.

## II.     Factual and Procedural Background

On August 9, 1999, South Carolina Department of Social Services ("DSS") received allegations of sexual abuse of the minor plaintiff, Jane Doe ("Jane"), and her biological brother, Kameron Cox ("Kameron"). At that time, Kameron was eight years old and Jane was four and both lived with their birth mother and her boyfriend. The South Carolina Family Court entered a finding of neglect against the children's birth mother and granted DSS custody of both children.

On October 7, 2002, the Family Court terminated the parental rights of the children's birth father and accepted the mother's relinquishment of her parental rights. The Family Court did not make a finding regarding the sexual abuse allegations.

Plaintiffs Gregory and Michelle Johnson submitted in June 2002, an application for adoption to DSS. They checked the boxes indicating that they could not accept a child with sexually aggressive behavior towards children, that they could not accept a child with incest problems, and that they could not accept a child of rape.

Defendant Debby Thompson is the adoption worker assigned to Kameron and Jane. In January 2003, Thompson completed a background summary on both children which was

presented to plaintiffs Gregory and Michelle Johnson (the "Johnsons") on January 17, 2003. The Johnson they were given an opportunity to look over the summary and ask questions. They initialed each page of the summary, and on the last page acknowledged that they received the summary and discussed it with Thompson. The background summary explained that there were allegations of sexual abuse, but no such finding was ever made by the Family Court. The summary also explained the different instances of allegations and suspicions of abuse by and against Kameron, as well as against Jane, and also identified the future therapeutic needs and concerns of both children.

Kameron and Jane met the Johnsons in February 2003, and were placed in the Johnsons' home on March 7, 2003. About March 26, 2003, the Johnsons decided not to pursue the adoption of Kameron. The Johnsons' adoption of Jane was finalized on November 6, 2003 in a Family Court hearing attended by the Johnsons and their counsel, Janet T. Butcher.

The Johnsons report that after adopting Jane, she became more sexually aggressive toward the Johnsons' birth children, with the birth children locking their doors at night for fear of being abused by her. Jane's public behavior also deteriorated into frequent temper tantrums, and the Johnson family had to abate their previous activities and public life for fear of embarrassment and for fear of the safety of others in her presence. The Johnsons claim her behavior eventually led them to place her in an institution for children with emotional problems. As Jane's adoptive parents, the Johnsons are paying for her care.

On January 5, 2006, Kameron pled guilty to sexual abuse of a minor in connection with charges he abused Jane in 2002, while both children were placed in the same foster home. The Johnsons subsequently filed suit to recover for, inter alia, damages to cover the costs of Jane's institutional care, as well as for the costs of her future medical and emotional care. They also sue on behalf of additional Does who were allegedly abused by Kameron.

Plaintiffs filed their original complaint in this court on December 29, 2006, asserting substantive due process and state law claims. Plaintiffs then filed an amended complaint in this court and a second complaint in state court. Defendants removed the state case, and it was consolidated with the original case under the double caption above. In addition to having an unusual procedural history, the presentation of the claims has been somewhat murky. It appears that the following claims remain:

1. a federal claim under 42 U.S.C. § 1983 against Thompson, alleging that she violated the civil rights and Constitutional rights of the Johnsons, Jane and the additional Does by failing to protect them from abuse and failing to disclose the abuse history of Kameron; and

2. state claims alleging

   a. professional negligence against DSS, Aydlette, Patterson and Thompson;

   b. that DSS, Aydlette, Patterson and Thompson breached their duty to

      i. properly supervise employees and contractors of DSS;
      ii. properly train employees and contractors of DSS;
      iii. provide a safe home for the birth children of the Johnsons as well as the adults in their home;
      iv. provide all the materials needed for the Johnsons to make an informed decision regarding their adoption of Doe;

      c.      that DSS, Aydlette, Patterson and Thompson conspired to hide Kameron's abuse of others; and

      d.      that DSS, Aydlette, Patterson and Thompson breached their contract with the Johnsons by not providing enough information to the Johnsons.

## III. Discussion

### A. Plaintiffs Cannot Assert a 42 U.S.C. § 1983 Claim against Aydlette, Patterson and Thompson

Plaintiffs have generally alleged that one or more defendants have violated unspecified constitutional rights of one or more of the plaintiffs, but fail to cite to any authority for legal support. Plaintiffs cite *Hope v. Pelzer*, 536 U.S. 730, 739 (2002), in which the U.S. Supreme Court states that for

> a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Plaintiffs have presented no authority establishing a constitutional duty of disclosure to prospective adoptive parents. The court can find no such authority, either. Furthermore, even if some authority were to exist for a constitutional right of disclosure in adoption actions, the Johnsons have offered no evidence to support a breach of any such duty. The Johnsons, while represented by adoption counsel, were provided the background summary, each page of which they initialed, and which disclosed allegations of abuse involving Kameron and Jane. The Johnsons' suggestion that they were not provided such information

is simply not supported by the record.

Plaintiffs have presented no authority establishing a constitutional right upon which to base their 42 U.S.C. §§ 1983 and 1985 claims on behalf of Jane for injuries inflicted by her brother Kameron while in foster care. There is no duty owed by a state or its agencies to protect an individual from private violence, as the Supreme Court has held that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process clause." *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 197 (1989). The court rejects plaintiffs' attempt to establish a custodial or foster care exception to the *DeShaney* rule.

The Fourth Circuit has considered the constitutional claim of a child injured by his foster parents, and determined that because the foster parents were not state actors, the state department of social services and its employees could not be held liable for the abuse. *Milburn by Milburn v. Anne Arundel County Dept. of Social Services*, 871 F.2d 474 (4th Cir. 1989). Further, the Fourth Circuit has determined that children in foster care have no clearly established right to affirmative state protection. *White by White v. Chambliss*, 112 F.3d 731, 738 (4th Cir. 1997).

The relationship of Jane and the additional Does to Kameron is even further attenuated than the relationships considered in *DeShaney*, *Milburn* and *White*. Those cases all considered parent and guardian relationships, and found that the state had no duty to protect those children. Kameron was not a parent to Jane or the additional Does–he was a

7

sibling. If the abuse of a parent or guardian cannot be considered abuse by a state actor, and thus not subject to a duty of protection, then the actions of a minor sibling cannot be subject to such a duty. As noted in *White*, "[d]omestic violence of all varieties is one of the most wrenching problems that any society must face, but to federalize the issue through the vehicle of section 1983 is not the answer." Id. at 738.

>    **B.    State law claims against Aydlette, Patterson and Thompson must be dismissed pursuant to the South Carolina Tort Claims Act.**

Defendants argue that all of plaintiffs' state law claims against the state agency and its officers are subject to dismissal based on sovereign immunity. The South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10 et. seq., constitutes the exclusive remedy for any tort committed by an employee of a governmental entity. S.C. Code Ann. § 15-78-70. Further, the Tort Claims Act requires that the government agency or political subdivision for which the employee was acting be substituted as the party defendant for claims regarding all actions of government employees acting within the course and scope of his employment. *Id*. There is no evidence that any of the actions complained of were outside the course and scope of the employment of the individual defendants. As DSS is already named as a defendant, defendants Aydlette, Patterson and Thompson are entitled to official immunity for acts committed in performing their official functions, and the claims against them must be dismissed. Furthermore, S.C. Code Ann. § 15-78-60 (5) states that the "governmental entity is not liable for a loss resulting from: ... the exercise of discretion or judgement by the governmental entity or employee or the performance or failure to perform any act or service

which is in the discretion or judgment of the governmental entity or employee." All of the remaining state law claims against defendants DSS, Aydlette, Patterson and Thompson fall within this immunity from liability because of their discretionary nature.

While the court is sympathetic to the plaintiffs for the injuries they have suffered, assuming they could prove their claims, the summary judgment record states no cognizable constitutional or statutory federal or state cause of action against the defendants.

## IV.  Conclusion

For the foregoing reasons, the court grants plaintiffs' motion for leave to file excess pages [dkt # 131 in 06-3663 and dkt # 51 in 07-1629] and grants defendants' motions for summary judgment [dkt # 121 in 06-3663 and dkt # 39 in 07-1629]. The remaining motions are deemed moot.

IT IS SO ORDERED.

September 26, 2008  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge